**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

GABRIEL CRUZ MACEDA, *on behalf of himself,*
*FLSA Collective Plaintiffs, and the Class,*

                     Plaintiff,

        v.

QUEENSBORO CW CORP.,
LAGE MGMT. CORP.,
PELHAM CW CORP.,
      d/b/a PELHAM MANOR CAR WASH,
AUTO CARE LUBES, LTD.,
      d/b/a 21ST CAR WASH & LUBE,
WEBSTER CAR WASH INC.,
      d/b/a WEBSTER CAR WASH,
JOHN DOE CORPORATIONS 1-50, and
JOAO LAGE,
      a/k/a JOHN LAGE
                 Defendants.

---

Case No:

**CLASS AND COLLECTIVE**
**ACTION COMPLAINT**

Plaintiff GABRIEL CRUZ MACEDA (hereby, "Plaintiff"), on behalf of himself and others

similarly situated, by and through his undersigned attorneys, hereby files this Class and Collective

Action Complaint against Defendants, QUEENSBORO CW CORP., LAGE MGMT. CORP.,

PELHAM CW CORP. d/b/a PELHAM MANOR CAR WASH, AUTO CARE LUBES, LTD. d/b/a

21ST CAR WASH & LUBE, WEBSTER CAR WASH INC. d/b/a WEBSTER CAR WASH, JOHN

DOE CORPORATIONS 1-50 ("Corporate Defendants"), and JOAO LAGE a/k/a JOHN LAGE ("Individual Defendant", and together with Corporate Defendants, "Defendants") and states as follows:

## **INTRODUCTION**

1.     Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), that he and similarly situated individuals are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to improper time-shaving, (2) illegally retained tips, (3) liquidated damages, and (4) attorneys' fees and costs.

2.     Plaintiff alleges that, pursuant to the New York Labor Law ("NYLL"), he and similarly situated individuals are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to improper time-shaving, (2) unpaid spread-of-hours, (3) illegally retained tips, (4) liquidated damages, (5) statutory penalties, and (6) attorneys' fees and costs.

3.     Plaintiff further alleges that, pursuant to the FLSA and the NYLL, he and others similarly situated were deprived of their statutory rights due to Defendants' retaliation against them and seeks to recover: (1) economic damages, (2) compensatory damages, (3) punitive damages, (4) damages for egregious emotional distress, and (5) attorneys' fees and costs.

4.     Plaintiff further alleges, on an individual basis, that Defendants violated the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq., when they fired Plaintiff when he attempted to return from medical leave. Plaintiff seeks all applicable remedies under the law, including compensatory damages, punitive damages, and attorneys' fees and costs.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

6.    Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

7.    For all relevant periods, Plaintiff GABRIEL CRUZ MACEDA was a resident of Bronx County, New York.

8.    Individual Defendant JOAO LAGE owns and operates an enterprise of car wash and oil change businesses, comprised of at least nineteen (19) locations in the New York City metropolitan area at the following locations:

| Location | Operating Name |
|---|---|
| 100 E Main St, New Rochelle, NY 10801 | Main Car Wash |
| 1095 E Tremont Ave, Bronx, NY 10460 | Tremont Wash and Lube |
| 135-18 Cross Bay Blvd, Ozone Park NY | Crossbay Car Wash & Lube |
| 1440 Westchester Ave, Bronx, NY 10472 | Westchester Ave Carwash & Lube |
| 1785 Webster Ave. Bronx, NY 10456 | Cross Bronx Car Wash |
| 1865 Webster Ave, Bronx, NY 10457 | Clean Touch Handwash |
| 2407 Boston Road, Bronx, NY | Boston Car Wash & Lube |
| 2434 Boston Post Rd, Larchmont, NY 10538 | Larchmont Carwash |
| 324 Halstead Ave, Mamaroneck, NY 10543 | Diamond Car Wash and Lube |
| 334 E 109th St, New York, NY 10029 | LMC Car Wash and Lube |
| 334 E 109th St, NY, NY 10029 | 1st Avenue Car Wash and Lube |
| 36-21 21ST ST, Long Island City, NY, 11106 | Michael's Car Wash |
| 38-40 21st St, Long Island City, NY 11101 | Queensboro Car Wash |
| 4300 Bronx Blvd. Bronx, NY 10466 | Boulevard Car Wash |
| 4391 Boston Post Rd Pelham Manor, NY 10803 | Pelham Manor Car Wash and Lube |
| 57-34 Main St, Flushing, NY 11355 | Jomar Car Wash |
| 613 North Ave, New Rochelle, NY 10801 | LMC Car Wash, New Rochelle |
| 90-55 Desarc Rd, Jamaica, NY 11417 | Midnight Express Lage Lube |
| 9110 Metropolitan Ave, Rego Park, NY 11374 | Metro Car Wash |

(collectively, the "Car Washes").

9.    Defendants operate all the Car Washes as a single integrated enterprise under the common control of the Individual Defendant. Specifically, the Car Washes are engaged in related activities, share common ownership, and have a common business purpose:

a.    Corporate Defendants are all engaged in the same business of operating car washes and lube stations in the Greater New York City area.

b.    All car washes are under the control of Corporate and Individual Defendants. Specifically, Individual Defendant JOAO LAGE operates the totality of the Car Washes as well as owns and operates the overall management corporation.

c.    Defendants have admitted to running an integrated enterprise of car washes in previous actions, including many of the Car Washes identified above. *See* **Exhibit A.**

d.    The DOL has publicly identified Individual Defendant JOAO LAGE as owning and operating an integrated enterprise of car washes, including some of those named above. *See* **Exhibit A**.

e.    Individual Defendant JOAO LAGE has been identified as the largest owner of car washes in the greater New York City area. *See* **Exhibit B**.

f.    Individual Defendant JOAO LAGE is listed as the officer or CEO of many of the corporations for the above-identified car washes on their respective corporate filings. *See* **Exhibit C**, New York Public Inquiry Documents for the Associated Corporations.

g.    The addresses for service of process for many of the above-identified corporations is the same as address for Defendant LAGE MGMT. CORP. *Id*.

4

h.      Defendants routinely transfer employees between locations on temporary and permanent basis.

10.    All Corporate Defendants are appropriately named in this action because the Car Washes share identical illegal wage and hour policies and are under common ownership, management and control. The Car Washes and the relevant Corporate Defendants are properly named on the basis of their outstanding liability to the FLSA Collective Plaintiffs and Class Members whom Plaintiff seeks to represent.

11.    Corporate Defendant QUEENSBORO CW CORP. is a domestic business corporation organized under the laws of the State of New York, with a principal place of business located at 38-26 21st St, Long Island City, NY 11101 and an address for service of process at 4391 Boston Road, Pelham NY, 10803.

12.    Corporate Defendant LAGE MGMT. CORP. is a domestic business corporation organized under the laws of the State of New York, with a principal place of business and an address for service of process at 4391 Boston Road, Pelham NY, 10803.

13.    Corporate Defendant PELHAM CW CORP. is a domestic business corporation organized under the laws of the State of New York, with a principal place of business and an address for service of process at 4391 Boston Road, Pelham NY, 10803.

14.    Corporate Defendant AUTO CARE LUBES, LTD. is a domestic business corporation organized under the laws of the State of New York, with a principal place of business located at 36-21 21st St, Long Island City, NY, 11106 and an address for service of process at 4391 Boston Road, Pelham NY, 10803.

15.    Corporate Defendant WEBSTER CAR WASH INC. is a domestic business corporation organized under the laws of the State of New York, with a principal place of business

located at 1783 Webster Avenue, Bronx, NY 10458 and an address for service of process at 4391 Boston Road, Pelham NY, 10803.

16.    JOHN DOE CORPORATIONS 1-50 are further business corporations which own and operate the remaining, unidentified car washes in Individual Defendant JOAO LAGE's enterprise.

17.    Individual Defendant JOAO LAGE a/k/a JOHN LAGE is the principal of all Corporate Defendants. Individual Defendant JOAO LAGE exercises operational control as it relates to all employees including Plaintiff. Individual Defendant JOAO LAGE exercises the power to fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff. At all times, employees of Defendants' Car Washes could complain to Individual Defendant JOAO LAGE directly regarding any of the terms of their employment, and Individual Defendant JOAO LAGE would have the authority to effect any changes to the quality and terms of employees' employments, including changing their schedules, compensation, or terminating or hiring such employees. Individual Defendant JOAO LAGE exercises functional control over the business and financial operations of each of the Corporate Defendants.

18.    At all relevant times, Corporate Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA, NYLL, and regulations thereunder.

19.    At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class Members was directly essential to the business operated by Defendants.

20.    Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

6

## FLSA COLLECTIVE ACTION ALLEGATIONS

21.     Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees (including car washers, attendants, mechanics, automotive service technicians, lube technicians, express technicians, and oil change technicians among others) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (herein, "FLSA Collective Plaintiffs").

22.     At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in: (1) a willful failure and refusal to pay Plaintiff and FLSA Collective Plaintiffs their proper wages and overtime premiums, due to a policy and practice of time shaving, and (2) illegally retaining Plaintiff's and FLSA Collective Plaintiffs' tips. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

23.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS

24.     Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt, (including car washers, car dryers, attendants,

mechanics, automotive service technicians, lube technicians, express technicians, and oil change technicians among others) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class" or "Class Members").

25.    The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

26.    The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

27.    Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of the Class in separate actions. All the Class Members were subjected to the same corporate practices by Defendants, as alleged herein, of Defendants' failure to pay all wages, including overtime wages and premiums, due to: (1) time-shaving, (2) failing to compensate spread of hours premiums, (3) illegally retained tips, (4) failing to provide proper wage and hour notices, at dates of hiring and annually thereafter, per requirements of the New York Labor Law, and (5) failing to provide accurate proper wage and hour statements, per requirements of the New York Labor Law. Defendants' corporate-wide policies and practices affected all Class Members similarly, and

8

Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures of Defendants.

28.    Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

29.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their

interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

30. Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

31. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a) Whether Defendants employed Plaintiff and Class Members within the meaning of the New York Labor Law;

b) What are and were the policies, practices, programs, procedures, protocols, and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and Class Members properly;

c) At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiff and Class Members for their work;

d) Whether Defendants properly notified Plaintiff and the Class Members of their hourly rates and overtime rates;

e) Whether Defendants paid Plaintiff and Class Members their owed spread of hours premiums;

10

f)  Whether Defendants paid Plaintiff and Class Members for all hours they worked, due to a policy of time shaving;

g)  Whether Defendants illegally retained Plaintiff's and Class Members' tips;

h)  Whether Defendants provided Plaintiff and Class Members with proper wage and hour notices, at their dates of hiring and annually, per requirements of the New York Labor Law; and

i)  Whether Defendants provided Plaintiff and Class Members with proper wage statements with each payment of wages, as required by New York Labor Law.

## STATEMENT OF FACTS

*Plaintiff's Employment Background*

32.  In or around February 2024, Plaintiff was hired by Defendants to work as car washer/car dryer at Defendants' Pelham Manor Car Wash and Lube location, located at 4391 Boston Post Road, Pelham, NY 10803.

33.  At all times during his employment with Defendants, Plaintiff was scheduled to work from 11:00 a.m. to 9:00 p.m., with a half-hour lunch break, six (6) days a week, from Thursday to Tuesday. As a result, Plaintiff was scheduled to work fifty-seven (57) hours per week.

34.  At all relevant times, Plaintiff was paid weekly, by check, at the prevailing minimum wage.

35.  FLSA Collective Plaintiffs and Class Members were scheduled to work similar shifts and were paid at similar rates and by similar means.

*Plaintiff's and Class Members' Timeshaving Claims*

36.  At all relevant times, Defendants failed to compensate Plaintiff, FLSA Collective Plaintiffs, and Class Members their proper wages for all hours that they worked, due to a policy and practices of timeshaving.

11

37.    Although Plaintiff and other employees always clocked in and out each day, the hours that they were compensated each week were always less than they clocked. Defendants accomplished this reduction in compensable hours with two practices:

38.    First, Defendants automatically deducted one hour of compensable work each day from each employee for a lunch break. However, Plaintiff, FLSA Collective Plaintiffs, and Class Members were only ever allowed half an hour for their lunch break. As a result, Defendants timeshaved Plaintiff, FLSA Collective Plaintiffs, and Class Members half an hour for every day worked, leading to Plaintiff being timeshaved three hours per week.

39.    Second, Defendants arbitrarily removed hours from his compensable time every week. Depending on the week Plaintiff lost anywhere from one to ten hours on his paycheck each week. Defendants similarly removed an arbitrary number of hours from the weekly paychecks of FLSA Collective Plaintiffs and Class Members.

40.    At all relevant times, Defendants knowingly and willfully operated their business with a policy of failing to pay wages and overtime wages to Plaintiff, FLSA Collective Plaintiffs, and Class Members for all hours that they worked due to Defendants' practice of timeshaving, in violation of the FLSA and the NYLL.

*Plaintiff's and Class Members' Spread-of-Hours Claims*

41.    At all relevant times, Defendants failed to compensate Plaintiff and Class Members their owed spread of  hours premiums.

42.    Plaintiff was regularly scheduled to work from 11:00 a.m. to 9:00 p.m. each day— a spread of ten hours. Due to the realities of the business, Plaintiff and other employees, including Class Members, would have to continue working past the end of their scheduled shift as a result of heavy traffic to the car wash, a large volume of technicians' work, or late relief. On those days on which Plaintiff worked with a spread of more than ten hours, Plaintiff was never paid his owed

12

spread of hours premiums. Class Members were similarly not paid their owed spread of hours premiums for days they worked with a spread of more than ten hours.

43.    At all relevant times, Defendants knowingly and willfully operated their business with a policy of not compensating Plaintiff and Class Members their owed spread-of-hours premiums.

*Plaintiff's and Class Members' Tip Retention Claims*

44.    At all relevant times, Plaintiff and Class Members also received tips from customers. When washing cars for clients, those clients would frequently leave cash tips for the car washers. Those tips were placed in a tip jar under the watch of the manager, Lucio [LNU], in his office, and would be divided evenly amongst the car washers at the end of each shift. However, Plaintiff and Class Members never received all of their tips, as Defendants retained a portion of the tips prior to redistributing them.

45.    Plaintiff began to suspect that something was wrong with his tips early in his employment, when he noticed that his tips barely changed from day to day, despite a large variance in business. Plaintiff especially noted that on the busiest days, he received almost no additional tips, despite serving many more customers and being handed many more tips than on less busy days. When Plaintiff asked his coworkers about this, they all said that they had noticed the same pattern and that Defendants took a portion of the tips.

46.    At all relevant times, Defendants knowingly and willfully operated their business with a policy of retaining a portion of the tips given to Plaintiff and Class Members. Plaintiff and Class Members are owed all of their illegally retained tips.

*Plaintiff's and Class Members' WTPA Claims*

47.     At all relevant times, Defendants failed to provide accurate wage notices and wage statements to Plaintiff and Class Members, in violation of the Wage Theft Protection Act ("WTPA"), incorporated into the NYLL.

48.     In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. Following the decision in *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 303 (2d Cir. 2024), Courts have generally held that there is no categorical bar on Article III standing for WTPA claims. Instead, the Second Circuit found that "[t]he lack of such notices and statements might impair 'an employee's ability to seek relief for violations they may not have information about'" to an extent sufficient to support standing.

49.     New York courts continue to find sufficient standing to support these claims.  One such court stated the following at Summary Judgment:

> "Here, the Court determines that Plaintiffs have adequately alleged and established actual and concrete downstream harm as a result of Defendants' failure to provide the required wage and hour notices and wage statements. Plaintiffs have shown that "Defendants' violations impaired their ability to seek relief due to a lack of information." More than that, Plaintiffs have proved, and the Court agrees, that Defendants' failure to maintain proper wage statements because of their automatic meal-break deduction and eight-hour rounding led Plaintiffs to lose wages. These are exactly the types of harm that the Second Circuit considered to be sufficient to establish standing in *Guthrie*. Therefore, the Court finds for Plaintiffs on this issue."

*Sanchez v. Clipper Realty, Inc.*, 2026 U.S. Dist. LEXIS 36716, *61 (S.D.N.Y. February 23, 2026) (internal citations removed).

50.     Here, Defendants' conduct has led to exactly the kind of injury contemplated in *Guthrie* and *Sanchez*. By failing to inform Plaintiff and Class Members of the actual hours that they worked by not providing them with wage statements, Defendants were able to hide their wrongdoing, as Plaintiff and Class Members were unaware of the fact that they were being

14

underpaid. Had Defendants provided proper wage statements to Plaintiff and Class Members which accurately listed the total number of hours Plaintiff and Class Members actually worked, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did not correspond to the hours the employee actually worked.

51.    By failing to report all of Plaintiff's and Class Members' hours, Defendants were able to reduce the employee earnings, and Defendants' contribution to those earnings, that they later reported to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of benefits available to the employee—such as unemployment benefits and social security benefits—as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. As a result, Plaintiff and Class Members were irreversibly injured with respect to their benefits (including social security benefits)—a fact which Defendants were able to hide from them by failing to provide them with proper wage statements.

52.    Furthermore, Defendants failed to provide any wage notices to Plaintiff or Class Members. Even if Defendants provided wage notices, the wage notices would have been inadequate as they would have failed to provide employees' actual pay rates, which were reduced by Defendants' time shaving. Once again, had Defendants provided Plaintiff and Class Members with wage notices that communicated the rates that Defendants actually intended to pay them, Plaintiff and Class Members would have been able to contest the unfair pay rates or choose not to take a job with Defendants. Instead, due to Defendants' intentional hiding of that information,

15

Plaintiff and Class Members accepted their employment with Defendants without the knowledge that Defendants did not intend to be bound to their promised pay rates.

53.    Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff and Class Members with wage notices and accurate wage statements, in violation of the NYLL.

*Plaintiff's and Class Members' Retaliation Claims*

54.    During Plaintiff's employment with Defendants, Plaintiff and other FLSA Collective Plaintiffs and Class Members frequently complained to Defendants about their working conditions, including the wage and hour issues detailed herein. Plaintiff regularly spoke to his manager about the hours that were shaved from his paychecks and witnessed other employees having similar conversations with Defendants' representatives and managers.

55.    In response to these complaints, Defendants retaliated against their employees, including Plaintiff, FLSA Collective Plaintiffs, and Class Members, by threatening them with adverse employment consequences if they continued complaining, including, among other things, firing them or sending them to another one of Defendants' locations so that they would have to travel further and be separated from the friends and family with whom they worked, and where they would be likely to earn fewer tips.

56.    At all relevant times, Defendants knowingly and willfully operated their business with a policy of retaliating against Plaintiff, FLSA Collective Plaintiffs, and Class Members for asserting their rights under the FLSA and the NYLL.

*Plaintiff's FMLA Claim*

57.    Towards the end of his employment with Defendants, Plaintiff became extremely ill; his blood pressure spiked and remained worryingly high and he suffered painful rashes all over his body, possibly as a consequence of his exposure to the chemicals that he used to wash and care

16

for the cars. As a result of this illness, he was hospitalized and, upon his discharge, ordered on bed rest for two months by his doctors.

58.     Plaintiff informed Defendants of his condition as well as his doctors' orders. Plaintiff therefore took a two month leave from work to heal and recover. However, when Plaintiff recovered and attempted to return to work, Defendants informed him that he would not be able to return to his position and was fired as a consequence of his leave.

59.     Defendants knowingly and willfully fired Plaintiff in response to his use of legally guaranteed and protected leave, in violation of the FMLA.

60.     Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class Members in this litigation, and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

61.     Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

62.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

63.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

64.     At all relevant times, Defendants had a policy and practice that failed to pay Plaintiff and FLSA Collective Plaintiffs their properly owed wages for all hours worked, due to a policy of time-shaving.

65.     At all relevant times, Defendants showed a willful disregard for the provisions of the FLSA by directly retaining for themselves a portion of tips given directly to Plaintiff and FLSA Collective Plaintiffs. Defendants failed to maintain tip sheets and failed to properly inform Plaintiff and FLSA Collective Plaintiffs of their respective tip pool contributions.

66.     Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

67.     Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their proper wages, including their proper wages and overtime premiums, when Defendants knew or should have known such was due.

68.     Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

69.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

18

70.    Due to the intentional, willful, and unlawful acts of Defendants, Plaintiff suffered damages in an amount not presently ascertainable of unpaid wages, unpaid overtime wages and premiums, damages representing disgorgement of illegally retained tips, and liquidated damages.

71.    Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

72.    Plaintiff realleges and incorporates all the above allegations of this Complaint as fully set forth herein.

73.    At all relevant times, Plaintiff and Class Members were employed by the Defendants within the meaning of the New York Labor Law, §§2 and 651.

74.    Defendants willfully violated Plaintiff's and Class Members' rights by subjecting them to a policy of failure to pay wages, including overtime wages, for all hours worked due to time-shaving.

75.    Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay them any spread of hour premiums for all their shifts worked in excess of ten (10) hours.

76.    Defendants failed to properly notify employees of their hourly pay rate and overtime rate, in direct violation of the New York Labor Law.

77.    Defendants willfully violated Plaintiff's and Class Members' rights by directly retaining for themselves a portion of tips given directly to Plaintiff and Class Members.

78.    Defendants failed to provide Plaintiff and Class Members with proper wage and hour notices, at their dates of hiring and annually, per requirements of the New York Labor Law.

19

79.    Defendants failed to provide Plaintiff and Class Members with proper wage statements with every payment as required by New York Labor Law § 195(3).

80.    Due to the Defendants' New York Labor Law violations, Plaintiff and Class Members are entitled to recover from Defendants: their unpaid wages, unpaid spread of hours premiums, damages representing the disgorgement of illegally retained tips, liquidated damages, statutory penalties, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to New York Labor Law.

## COUNT III

### <u>RETALIATION AND INTERFERENCE UNDER THE</u><br><u>FAIR LABOR STANDARDS ACT</u>

81.    Plaintiff realleges and incorporates all the above allegations as if fully set forth herein.

82.    At all relevant times, Plaintiff and FLSA Collective Plaintiffs were employees of Defendants within the meaning of the FLSA, and were  persons covered by and intended to benefit from the provisions of the FLSA.

83.    Section 15(a)(3) of the FLSA provides that it is a violation to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint […] under or related to this Act."

84.    As alleged herein, Plaintiff and FLSA Collective Plaintiffs complained to Defendants regarding Defendants' unlawful wage policies. In response to such complaints, Defendants engaged in retaliatory conduct against Plaintiff and FLSA Collective Plaintiffs with the intent to punish them for and prevent them from exercising their rights under the FLSA.

85.    Defendants' retaliatory termination was in willful disregard of the provisions of the FLSA.

86.    As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs suffered damages in the form of lost earnings and egregious emotional distress. Plaintiff seeks all applicable remedies under the law, including compensatory damages, punitive damages, damages for egregious emotional distress, back pay, front pay, and attorneys' fees and costs.

## COUNT IV

## RETALIATION AND INTERFERENCE UNDER THE NEW YORK LABOR LAW

87.    Plaintiff realleges and incorporates all the above allegations as if fully set forth herein.

88.    At all relevant times, Plaintiff and Class Members were employees of Defendants within the meaning of the NYLL, and were persons covered by and intended to benefit from the provisions of the NYLL.

89.    Defendants willfully violated Plaintiff's and Class Members' rights under the NYLL by retaliating against Plaintiff and Class Members by threatening them and their employment after asserting their rights under the NYLL.

90.    Defendants' actions constitute a violation of Section 215 of the NYLL. In relevant part, NYLL § 215(1)(a) states:

> No employer or his or her agent, or the officer or agent of any corporation, partnership, or limited liability company, or any other person, shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee (i) because such employee has made a complaint to his or her employer, or to the commissioner or his or her authorized representative, or to the attorney general or any other person, that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter, or any order issued by the commissioner. . . . (emphasis added).

21

91.     As alleged herein, Plaintiff and Class Members complained to Defendants regarding Defendants' unlawful wage policies. In response to such complaints, Defendants engaged in retaliatory conduct against Plaintiff and Class Members, in violation of Section 215(a).

92.     This retaliatory conduct by Defendants was in willful disregard of the provisions of the NYLL.

93.     As a direct and proximate result of Defendants' willful disregard of the NYLL, Plaintiff and Class Members suffered damages in the form of lost earnings and egregious emotional distress. Plaintiff seeks all applicable remedies under the law, including compensatory damages, punitive damages, damages for egregious emotional distress, back pay, front pay, and attorneys' fees and costs.

## COUNT V

### INTERFERENCE AND RETALIATION UNDER
### THE FAMILY AND MEDICAL LEAVE ACT

94.     The FMLA states in pertinent part: "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period …. because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S. Code § 2612(a)(1)(D).

95.     The FMLA defines serious health condition as, "an illness, injury, impairment, or physical or mental condition that involves … continuing treatment by a health care provider. 29 U.S. Code § 2611(11).

96.     Section 2615(a) of the FMLA, states in pertinent part:

Interference with rights.

i.     Exercise of rights. It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.

ii.    Discrimination. It shall be unlawful for any employer to discharge or in any other

22

manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

97.    Defendant is subject to the FMLA as a covered employer. Defendant is a covered employer because they employ fifty (50) or more employees for each working day during each of the twenty (20) or more calendar workweeks in the year preceding their violation of Plaintiff MACEDA's rights under the FMLA. Defendant has more than fifty (50) employees and therefore meets FMLA standards.

98.    Plaintiff MACEDA is an eligible employee under the FMLA because he had worked at least 1,250 hours in the 12 months preceding his request for leave.

99.    Defendant interfered with Plaintiff MACEDA's rights under the FMLA by terminating him because he took time off due to a serious medical condition on the order and recommendation of his doctors.

100.    Plaintiff MACEDA seeks all applicable remedies under the law, including compensatory damages, punitive damages, and attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs, and Class Members, respectfully requests that this Court grant the following relief:

a.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA, the FMLA, and the NYLL;

b.    An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

23

c.   An award of unpaid wages, including overtime compensation at the proper rate of one-and-one-half times the regular rate of pay for hours worked in excess of forty (40) per workweek, due to time shaving due under the FLSA and the NYLL;

d.   An award of unpaid spread of hours premiums, due under the NYLL;

e.   An award equal to the amount of the improperly retained tips withheld by Defendants, due under the FLSA and NYLL;

f.   An award of statutory penalties as a result of Defendants' failure to comply with New York Labor Law wage notice and wage statement requirements;

g.   An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to 29 U.S.C. § 216;

h.   An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to the NYLL;

i.   An award of back pay, front pay, compensatory damages, punitive damages, and damages for egregious emotional distress, due under the FLSA and the NYLL;

j.   An award of back pay, compensatory damages, and punitive damages due under the FMLA;

k.   An award of pre-judgment and post-judgment interest, costs, and expenses of this action together with reasonable attorneys' and experts' fees and statutory penalties;

l.   Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

m.   Designation of this action as a class action pursuant to F.R.C.P. 23;

n.   Designation of Plaintiff as Representative of Class; and

o.   Such other and further relief as this Court deems just and proper.

## JURY DEMAND

24

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: August 4, 2026                                  Respectfully submitted,

New York, New York

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181

*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

By:     /s/ *C.K. Lee*
        C.K. Lee, Esq.